# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AARON BERROTERAN, | ) Case No. _____ |
| Plaintiff, | ) |
| | ) JURY TRIAL DEMANDED |
| v. | ) |
| | ) **COMPLAINT FOR VIOLATION OF THE** |
| CIT GROUP INC., ELLEN R. ALEMANY, | ) **SECURITIES EXCHANGE ACT OF 1934** |
| MICHAEL L. BROSNAN, MICHAEL A. | ) |
| CARPENTER, DORENE C. DOMINGUEZ, | ) |
| ALAN FRANK, WILLIAM M. FREEMAN, | ) |
| R. BRAD OATES, GERALD ROSENFELD, | ) |
| JOHN RYAN, SHELIA A. STAMPS, | ) |
| KHANH T. TRAN, LAURA S. UNGER, | ) |
| FIRST CITIZENS BANCSHARES, INC., | ) |
| FIRST-CITIZENS BANK & TRUST | ) |
| COMPANY, and FC MERGER | ) |
| SUBSIDIARY IX, INC., | ) |
| | ) |
| Defendants. | ) |

Plaintiff Aaron Berroteran ("Plaintiff"), by his undersigned attorneys, for this Complaint against Defendants (defined herein), alleges the following upon personal knowledge with respect to himself and upon information and belief based upon the investigation of counsel as to all other allegations herein:

## NATURE OF ACTION

1. On October 16, 2020, CIT Group Inc. ("CIT" or the "Company") announced that it will be acquired First Citizens BancShares, Inc. ("First Citizens"), Citizens Bank & Trust Company ("FCB"), and FC Merger Subsidiary IX, Inc. ("Merger Sub") (together with Parent and FCB, "BancShares") (the "Proposed Merger").

2. On October 15, 2020, the Board of Directors (the "Board" or "Individual Defendants") of CIT caused CIT to enter into an agreement and plan of merger (the "Merger Agreement") with BancShares.

3. Under the terms of the Merger Agreement, CIT's stockholders will receive 0.06200 shares of First Citizens common stock for each share of CIT common stock they own.

4. On November 16, 2020, Defendants filed a registration statement (the "S-4") with the U.S. Securities and Exchange Commission ("SEC"), which omits material information with respect to the Proposed Merger.

5. As a result, Plaintiff alleges herein that Defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the Exchange Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.

7. This Court has jurisdiction over Defendants because each Defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

9. Plaintiff is and has been continuously throughout all relevant times the owner of CIT common stock.

10. Defendant CIT is a Delaware corporation and maintains its principal executive offices at 11 W. 42nd Street, New York, NY 10036. CIT's common stock is traded on the New York Stock Exchange under the ticker symbol "CIT."

11. Defendant Ellen R. Alemany is Chief Executive Officer and Chair of the Board.

12. Defendant Michael L. Brosnan is a member of the Board.

13. Defendant Michael A. Carpenter is a member of the Board.

14. Defendant Dorene C. Dominguez is a member of the Board.

15. Defendant Alan Frank is a member of the Board.

16. Defendant William M. Freeman is a member of the Board.

17. Defendant R. Brad Oates is a member of the Board.

18. Defendant Gerald Rosenfeld is a member of the Board.

19. Defendant John Ryan is a member of the Board.

20. Defendant Sheila A. Stamps is a member of the Board.

21. Defendant Khanh T. Tran is a member of the Board.

22. Defendant Laura S. Unger is a member of the Board.

23. Defendants in paragraphs eleven through twenty-two are referred to herein as the "Individual Defendants."

24. Defendant First Citizens is a Delaware corporation.

25. Defendant FCB is a North Carolina chartered commercial bank and a wholly-owned subsidiary of First Citizens.

26. Defendant Merger Sub is a Delaware corporation and a wholly-owned subsidiary of FCB.

27. Defendants in paragraphs ten through twenty-six are referred to herein as the "Defendants."

**SUBSTANTIVE ALLEGATIONS**

28. CIT is a financial holding company with over a century of experience and operates

a principal bank subsidiary, CIT Bank, N.A. ("CIT Bank"). CIT Bank's commercial banking segment includes commercial financing, community association banking, middle market banking, equipment and vendor financing, factoring, railcar financing, treasury and payments services, and capital markets and asset management. CIT Bank's consumer banking segment includes a national direct bank and regional branch network

29. On October 15, 2020, the Company entered into the Merger Agreement with BancShares.

30. Under the terms of the Merger Agreement, CIT's stockholders will receive 0.06200 shares of First Citizens common stock for each share of CIT common stock they own.

31. The press release announcing the Proposed Merger stated as follows:

RALEIGH, North Carolina and NEW YORK, New York – October 16, 2020 – First Citizens BancShares, Inc. (NASDAQ: FCNCA) ("First Citizens"), the parent company of First-Citizens Bank & Trust Company, and CIT Group Inc. (NYSE: CIT) ("CIT"), the parent company of CIT Bank, N.A., jointly announced today that they have entered into a definitive agreement under which the companies will combine in an all-stock merger of equals to create the 19th largest bank in the United States based on assets.

The transformational partnership will create greater scale to drive growth, improve profitability and enhance stockholder value. The transaction brings together the complementary strengths of First Citizens' low-cost retail deposit franchise and full suite of banking products with CIT's national commercial lending expertise and strong market positions. In addition, it creates a more diversified deposit strategy with First Citizens' 550+ full-service retail banking locations in key growth MSAs, including across the Southeast, and CIT's rapidly growing homeowner association business, leading direct bank and complementary Southern California retail branch network.

Under the terms of the definitive merger agreement, which was unanimously approved by the Boards of Directors of both companies, CIT stockholders will receive 0.0620 shares of First Citizens class A common stock for each share of CIT common stock they own. First Citizens stockholders will own approximately 61% and CIT stockholders will own approximately 39% of the combined company.

The combined company will operate under the First Citizens name and will trade under the First Citizens ticker symbol FCNCA on the Nasdaq stock market. The

combined company will be headquartered in Raleigh, N.C., and will maintain significant operation centers in New York, Pasadena, Omaha, Phoenix, Jacksonville, Fla., New Jersey and Columbia, S.C., among other locations.

Frank Holding, Jr., Chairman and CEO of First Citizens, will retain the same roles at the combined company. Ellen R. Alemany, Chairwoman and CEO of CIT, will assume the role of Vice Chairwoman and play a key role in the merger integration. In addition, she will serve on the Board of Directors of the combined company.

The Board of Directors of the combined company will consist of 14 directors, the current 11 First Citizens Board members and three CIT Board members, including Ms. Alemany.

"This is a transformational partnership for First Citizens and CIT designed to create long-term value for all of our constituents including our stockholders, our customers, our associates and our communities," said Frank Holding, Jr. "We have long admired CIT's market-leading commercial business, including their strong market position across multiple asset classes. Under Ellen's leadership, CIT has made tremendous progress in reducing its cost of funds, enhancing risk management processes and retaining key talent. First Citizens has a long history of delivering strong returns to our stockholders, gathering low-cost deposits and driving strong earnings, which are all supported by an exceptional credit culture, strong capital and excellent risk management. Together, First Citizens and CIT will be able to leverage both companies' unique attributes to create the 19th largest bank in the country, well-positioned to compete across the United States."

Ellen R. Alemany, Chairwoman and CEO of CIT, said, "Frank and I have long respected each other's companies and believe this transaction will accelerate our strategic goals by bringing together the expertise of both banks to create scale, strength and value. I'm proud of the work we have done to transform CIT in recent years to a leading, national commercial bank. This transaction will build on those efforts and more fully unlock the potential in our core franchises. In addition, the strength that is created as a larger U.S. bank will enable greater opportunities for our team, our customers and our communities."

Financially Compelling Transaction for All Stockholders
Significant Earnings Per Share Accretion and Tangible Book Value Per Share Accretion: The transaction is targeted to deliver in excess of 50% EPS accretion once cost savings are fully phased in. The tangible book value per share accretion is targeted to be in excess of 30% at closing.

Cost Synergies: The companies have identified approximately 10% in targeted pro forma combined noninterest expense savings.

Long-term Stockholder Value Creation and Tangible Book Value Per Share Growth Focus: The combined company expects to continue to emphasize tangible

5

book value growth over time. On a pro forma basis, the combined company targets delivering top-tier operating performance, with a ROTCE of approximately 13%.

Strong Capital and Credit Reserve Levels: The combined company is expected to have in excess of 9.4% Tier I Common Equity at closing. The combined allowance for credit losses will be approximately $1.8 billion in aggregate, representing approximately 2.4% of the loan portfolio. The combined company's targeted strong capital ratios are designed to support organic growth, additional acquisitions and capital management strategies to enhance stockholder value.

Strategically Compelling for Both Organizations
Enhanced Scale to Drive Growth, Improve Profitability and Enhance Stockholder Value: The pro forma organization, with over $100 billion in assets and over $80 billion in deposits, combines two high-quality companies focused on driving strong, consistent growth and profitability. First Citizens stockholders have enjoyed stock price performance that has exceeded the Nasdaq Bank Index over the last 5-, 10- and 20-year periods. This transaction provides a platform for growth and profitability that is expected to drive stockholder returns for many years into the future.

Combines First Citizens' Lower Cost Deposit Franchises and CIT's Market-Leading Nationwide Commercial Franchise: The combined company expects to benefit from the combination of First Citizens' strong, low-cost deposit base and CIT's leading nationwide lending platform. CIT's industry, asset class and capital markets expertise can deliver financing solutions to First Citizens' strong client base. First Citizens brings a full suite of banking products and services to CIT commercial and retail customers, including deposit, mortgage, auto financing, merchant services, credit and debit cards, wealth management and trust solutions. First Citizens' strong deposit suite and low-cost funding is targeted to enable the pro forma company to expand its business and compete more effectively with larger competitors. CIT's HOA business is also expected to continue to be an important low-cost funding source.

Experienced Management Teams with Significant Integration Experience: This merger combines two highly respected management teams operating complementary business lines. Both companies have significant merger integration experience and proven track records of successfully integrating acquisitions to drive stockholder value. First Citizens has been in a continuous merger and integration cycle for the last 10+ years acquiring over 25 companies resulting in superior business performance and stock price performance over this time period. CIT's three acquisitions since 2014 represent over $30 billion in acquired and integrated assets.

Combined Company Poised For Long-Term Growth: Several of the combined companies' business lines will be enhanced through this combination. The combined Southern Californian branch and deposit-gathering footprint will be

substantially enhanced. The mortgage business is targeted to double in size with attractive growth prospects. Complementary SBA business lines are targeted to significantly increase in scale and present additional opportunities for growth.

Significant Opportunity to Optimize the Balance Sheet and Earnings: Lower funding costs are targeted to enable CIT's commercial lines to compete more effectively, and a diversified funding mix should enable the combined company to reduce financing costs through improved credit ratings for CIT's businesses and additional scale and diversification.

Combined Company Laser-Focused on Credit Quality, Capital Adequacy and Risk Management: First Citizens has a long track record of significantly below peer Non-Performing Asset ratios and Net Charge-Off ratios. Both companies have completed extensive due diligence. This transaction provides immediate product and geographic diversification.

Strong Reputation, Robust Customer Relationships and Similar Cultures Reduce Integration Risk: The combined company is designed to leverage the strong reputation of both companies with the goal of delivering strong performance and results for customers, colleagues and communities.

Company Well Positioned for Long-Term Value Creation Due to Stable Low-Cost Deposits, Strong Presence in High-Growth MSAs Nationwide and Online Platform, Providing Diverse Funding Mix: First Citizens' deposit costs are currently 0.13% and have historically been consistently below peer funding costs. CIT's direct banking deposit platform offers a unique opportunity to scale online deposits in a cost-efficient manner and its leading homeowner association deposit channel offers additional growth and diversification.

Approval and Timing
The merger is expected to close in the first half of 2021, subject to satisfaction of customary closing conditions, including receipt of regulatory approvals and approval by the stockholders of each company.

Transaction Advisors
Piper Sandler & Co. served as financial advisor to First Citizens, with Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P. serving as legal advisor. Keefe, Bruyette & Woods, A Stifel Company, and Morgan Stanley & Co. LLC served as financial advisor to CIT, with Sullivan & Cromwell LLP serving as legal advisor.

32. On November 16, 2020, Defendants filed the S-4 with the SEC, which omits material information regarding the Proposed Merger.

### Financial Projections

33. The S-4 omits material information regarding CIT's financial projections.

34. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

35. The S-4 fails to disclose the CIT Street Estimates, the Case 1 Adjusted CIT Financial Projections, and the Case 2 Adjusted CIT Financial Projections.

### Financial Analyses

36. The S-4 omits material information regarding the financial analyses performed by Keefe, Bruyette & Woods, Inc. ("KBW") and Morgan Stanley & Co. LLC ("MS").

37. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

38. The S-4 fails to disclose the individual multiples and metrics for the companies observed by KBW in its Selected Companies Analyses.

39. The S-4 fails to disclose the following regarding KBW's Relative Contribution Analysis:

   (i) The balance sheet data used in the analysis;

   (ii) The CIT Street Forecasts used in the analysis;

   (iii) The adjusted financial forecasts and projections of CIT used in the analysis;

8

and

    (iv)    The diluted share counts used in the analysis.

40. The S-4 fails to disclose the following regarding KBW's Pro Forma Financial Impact Analysis:

    (i)    The closing balance sheet estimates used in the analysis;

    (ii)    The CIT Street Forecasts used in the analysis; and

    (iii)    The "pro forma assumptions."

41. The S-4 fails to disclose the following regarding KBW's CIT Discounted Cash Flow Analysis:

    (i)    The CIT Street Forecasts used in the analysis;

    (ii)    The inputs and assumptions underlying the discount rates ranging from 11.0% to 14.0%;

    (iii)    The estimated excess cash flows that CIT could generate over the five-year period from 2021 through 2026;

    (iv)    CIT's terminal values; and

    (v)    The basis for applying a range of 7.0x to 9.0x, assuming 8.0% earnings growth and 6.0% balance sheet growth, and assuming that CIT would maintain a common equity tier 1 ratio of 10.50%.

42. The S-4 fails to disclose the following regarding KBW's First Citizens Discounted Cash Flow Analysis:

    (i)    The inputs and assumptions underlying the discount rates ranging from 9.0% to 12.0%;

(ii) The estimated excess cash flows that First Citizens could generate over the five-year period from 2021 through 2026;

(iii) First Citizens' terminal values; and

(iv) The basis for applying a range of 9.0x to 12.0x, assuming 9.0% earnings growth and 7.0% balance sheet growth, and assuming that First Citizens would maintain a common equity tier 1 ratio of 10.00%.

43. The S-4 fails to disclose the following regarding KBW's Pro Forma Combined Discounted Cash Flow Analysis:

(i) The cost savings, related expenses, accounting adjustments, and restructuring charges used in the analysis;

(ii) The inputs and assumptions underlying the discount rates ranging from 10.5% to 12.5%;

(iii) The estimated excess cash flows that the pro forma combined entity could generate over the five-year period from 2021 through 2026;

(iv) The pro forma combined entity's terminal values; and

(v) The basis for applying a range of 9.0x to 11.0x and assuming that the pro forma combined entity would maintain a common equity tier 1 ratio of 10.00%.

44. The S-4 fails to disclose the individual multiples and metrics for the companies observed by MS in its Public Trading Comparables Analyses.

45. The S-4 fails to disclose the following regarding MS's CIT Dividend Discount Analysis:

(i) The CIT Street Forecasts used in the analysis;

(ii) The terminal values of CIT;

    (iii) The basis for using a range of terminal forward multiples of 7.0x to 9.0x, assuming 8% annual growth, assuming that CIT would make distributions of capital in excess of the amount necessary to achieve a 10.5% common equity Tier 1 ratio level, and assuming a 1.0% opportunity cost of cash; and

    (iv) The inputs and assumptions underlying the 12.5% to 14.0% discount rates.

 46. The S-4 fails to disclose the following regarding MS's CIT Analyst Price Targets Analysis:

    (i) The price targets observed in the analysis; and

    (ii) The sources thereof.

 47. The S-4 fails to disclose the following regarding MS's First Citizens Dividend Discount Analysis:

    (i) The terminal values of First Citizens;

    (ii) The basis for using a range of terminal forward multiples of 9.0x to 11.0x, assuming 9% annual growth, assuming that First Citizens would make distributions of capital in excess of the amount necessary to achieve a 10.0% common equity Tier 1 ratio level, and assuming a 1.0% opportunity cost of cash; and

    (iii) The inputs and assumptions underlying the 6.8% to 8.8% discount rates.

 48. The S-4 fails to disclose the following regarding MS's Pro Forma Accretion/Dilution Analysis:

    (i) The CIT Street Forecasts used in the analysis; and

    (ii) The synergies used in the analysis.

 49. The S-4 fails to disclose the following regarding MS's Pro Forma Dividend Discount Analysis:

   (i)  The CIT Street Forecasts used in the analysis;

   (ii)  The synergies used in the analysis;

   (iii)  The terminal values of First Citizens Class A common stock;

   (iv)  The basis for using a range of terminal forward multiples of 9.0x to 11.0x, assuming that First Citizens would make distributions of capital in excess of the amount necessary to achieve a 10.0% common equity Tier 1 ratio level, and assuming a 1.0% opportunity cost of cash; and

   (v)  The inputs and assumptions underlying the 9.2% to 11.2% discount rates.

### Potential Conflicts of Interest of KBW and MS

  50.  The S-4 omits material information regarding potential conflicts of interest of KBW and MS.

  51.  Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

  52.  The S-4 fails to disclose the amount of compensation KBW received for acting as:

   (i)  Joint book-running manager for CIT's August 2018 offering of senior unsecured notes;

   (ii)  Joint book-running manager for CIT Bank's September 2019 offering of senior unsecured fixed-to-floating rate notes;

   (iii)  Senior co-manager for CIT's November 2019 offering of preferred stock,

   (iv)  Senior co-manager for CIT's November 2019 offering of fixed-to-fixed rate subordinated notes; and

   (v)  Financial advisor to CIT in connection with its September 2020 disposition

of its investment management and trust business.

53. The S-4 fails to disclose the timing and nature of the past services MS provided to the Company.

54. The S-4 fails to disclose whether MS has performed past services for First Citizens or its affiliates, and if so, the timing and nature of the services and the amount of compensation received by MS for providing the services.

### Confidentiality Agreements

55. The S-4 fails to disclose whether the Company entered into any confidentiality agreements that contained standstill or don't ask, don't waive provisions.

56. Without this information, stockholders may have the mistaken belief that, if these potentially interested parties wished to come forward with a superior offer, they are or were permitted to do so, when in fact they are or were contractually prohibited from doing so.

57. If disclosed, this information would significantly alter the total mix of information available to CIT's stockholders.

### COUNT I

**Claim Against the Individual Defendants and CIT for Violation of Section 14(a) of the Exchange Act and Rule 14a-9**

58. Plaintiff repeats and realleges the above-referenced allegations as if fully set forth herein.

59. The Individual Defendants disseminated the false and misleading S-4, which contained statements that, in violation of Section 14(a) of the Exchange Act and Rule 14a-9, in light of the circumstances under which they were made, failed to state material facts necessary to make the statements therein not materially false or misleading.

60. CIT is liable as the issuer of these statements.

61. The S-4 was prepared, reviewed, and/or disseminated by the Individual Defendants.

62. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the S-4.

63. The Individual Defendants were at least negligent in filing the S-4 with these materially false and misleading statements.

64. The omissions and false and misleading statements in the S-4 are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Merger.

65. A reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the S-4 and in other information reasonably available to stockholders.

66. The S-4 is an essential link in causing Plaintiff to approve the Proposed Merger.

67. Defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

68. As a direct and proximate result of Defendants' conduct, Plaintiff is threatened with irreparable harm.

## COUNT II

**Claim Against the Individual Defendants and BancShares for Violation of Section 20(a) of the Exchange Act**

69. Plaintiff repeats and realleges the above-referenced allegations as if fully set forth herein.

70. The Individual Defendants and BancShares acted as controlling persons of CIT within the meaning of Section 20(a) of the Exchange Act as alleged herein.

71. By virtue of their positions as officers and/or Board members of CIT and

participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the S-4, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

72. Each of the Individual Defendants and BancShares was provided with or had unlimited access to copies of the S-4 alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

73. Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The S-4 contains the unanimous recommendation of the Individual Defendants to approve the Proposed Merger. They were thus directly involved in the making of the S-4.

74. BancShares also had supervisory control over the composition of the S-4 and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the S-4.

75. By virtue of the foregoing, the Individual Defendants and BancShares violated Section 20(a) of the Exchange Act.

76. The Individual Defendants and BancShares had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein.

77. By virtue of their positions as controlling persons, these Defendants are liable

pursuant to Section 20(a) of the Exchange Act.

78. As a direct and proximate result of Defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief against Defendants as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from consummating the Proposed Merger;

B. In the event Defendants consummate the Proposed Merger, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a S-4 that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that Defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as Rule 14a-9;

E. Awarding Plaintiff the costs of this action, including reasonable allowance for attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: January 14, 2021

**OF COUNSEL:**

**GRABAR LAW OFFICE**
Joshua H. Grabar
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (267) 507-6085
Email: jgrabar@grabarlaw.com

**RIGRODSKY LAW, P.A.**

By: */s/ Gina M. Serra*
Seth D. Rigrodsky (#3147)
Gina M. Serra (#5387)
300 Delaware Avenue, Suite 210
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: sdr@rl-legal.com
Email: gms@rl-legal.com

*Attorneys for Plaintiff*